AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Apple iPhone<br>Seizure No. 2021250400101401-005<br>("Target Device 1") | ) ) ) ) ) ) |
| Case No. | '22  MJ1848 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Eric Sajo*

*Applicant's signature*

Eric Sajo, HSI Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date: _____ May 27, 2022 _____

*Judge's signature*

City and state:  San Diego, California        Hon. Andrew G. Schopler, United States Magistrate Judge

*Printed name and title*

| Print | Save As... | Attach | Reset |
|---|---|---|---|

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

> Apple iPhone
>
> Seizure No. 2021250400101401-005
>
> ("**Target Device 1**")

The Target Device is currently in the possession of Homeland Security Investigations, located at 880 Front Street, San Diego, CA 92101.

## **ATTACHMENT B-1**
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 19, 2020, up to and including January 18, 2021:

    a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of Methamphetamine or some other federally controlled substance, from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

## **AFFIDAVIT**

I, Special Agent Eric Sajo, being duly sworn, hereby state as follows:

### **INTRODUCTION**

1.     I submit this affidavit in support of an application for a warrant to search the following electronic devices:

> Apple iPhone
>
> Seizure No. 2021250400101401-005
>
> (**"Target Device 1"**)

> Apple iPhone
>
> Seizure No. 2021250400101402-001
>
> (**"Target Device 2"**)

> Samsung Galaxy Phone
>
> Seizure No. 2021250400101402-001
>
> (**"Target Device 3"**)

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963, as further described in Attachment B.  The requested warrant relates to the investigation and prosecution of Jose Antonio Jr. PEREZ and Elizabeth BATTA ("Defendants") for importing approximately 31.86 kilograms (70.24 pounds) of methamphetamine from Mexico into the United States.  The Target Devices are currently in the custody of Homeland Security Investigations and located at 880 Front Street, San Diego, CA 92101.

2.     The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the

**Target Devices**, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

## BACKGROUND

3.      I have been employed as a Special Agent with Homeland Security Investigations since March 2007.  I am an "Investigative or Law Enforcement Officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7).  I am currently assigned to the Special Operations and Tactics Group in San Diego, California.  I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4.      During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and/or distribution of controlled substances into and through the Southern District of California.  Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers.

5.      Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones.  A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry.  With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States.  These communications can occur before, during, and after the narcotics are imported into the United States.  For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation.  When the importation is underway, narcotics traffickers frequently

communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions, and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

6.     Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a.     tending to indicate efforts to import controlled substances from Mexico into the United States;

b.     tending to identify accounts, facilities, storage devices, and/or services –such as email addresses, IP addresses, and phone numbers – used to facilitate the importation of controlled substances from Mexico into the United States;

c.     tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d.  tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7.  I, Special Agent Eric Sajo, declare under penalty of perjury, the following is true and correct:

8.  On January 17, 2021, at approximately 2149 hours, Elizabeth BATTA ("BATTA"), a United States citizen, applied for entry into the United States from Mexico through the San Ysidro Port of Entry in SENTRI vehicle lane #03A.  BATTA was the driver of a rented, 2020 Toyota Tacoma ("the vehicle") bearing California license plates. Passenger was identified as Jose Antonio PEREZ Jr. ("PEREZ").  Neither the vehicle or occupants were enrolled or registered with the Customs and Border Protection (CBP) SENTRI program.  During inspection, the vehicle front license plate was a positive match for an NCIC stolen vehicle.

9.  A CBP Officer received two negative Customs declarations from BATTA and PEREZ.  BATTA stated she was crossing the border to go to Fresno, California.

10.  A CBPO operating the Z-Portal X-Ray machine detected anomalies in the gas tank of the vehicle.

11.  A Canine Enforcement Team was conducting secondary inspection operations when the Human and Narcotic Detection Dog alerted to the gas tank of the vehicle.

12.     A CBPO operating a fiber optic scope detected anomalies in the gas tank of the vehicle.

13.     Further inspection of the vehicle resulted in the discovery of 65 packages concealed in the gas tank of the vehicle, with a total approximate weight of 31.86 kgs (70.24 lbs).  A sample of the substance contained within the packages field tested positive for the characteristics of methamphetamine.

14.     BATTA and PEREZ were placed under arrest at approximately 0215 hours.

15.     During a post-Miranda interview, BATTA denied knowledge that the narcotics were in the vehicle. BATTA stated that she was going to Mexico from Fresno to meet up with friends to celebrate the life of her late friend "Keith."  BATTA did not know Keith's last name nor her passenger's last name (PEREZ).  BATTA stated that she crossed into Mexico on Saturday January 16, 2021, at approximately 2300 hours.  BATTA stated the vehicle was parked in a garage in Tijuana.  BATTA stated that on Sunday, January 17, 2021, PEREZ asked her to drive the vehicle into the United States due to PEREZ being tired.

16.     During a post-Miranda interview, PEREZ stated that he was asked by his friend Rueben CASTILLO to take money down to Mexico from Fresno in the vehicle. PEREZ stated that he concealed approximately $32,000 U.S. dollars in the center console of the vehicle as he crossed into Mexico.  In Mexico, CASTILLO instructed PEREZ to give the vehicle keys to an unknown male in the lobby of PEREZ's hotel (Grand Hotel Tijuana).  PEREZ stated that he felt something was not right.  Initially, PEREZ stated that he was told to leave the keys with the front desk of the hotel per hotel policy.  PEREZ stated that he was paid $2,000 USD to help CASTILLO in transporting money to Mexico. On Sunday, January 17, 2021, CASTILLO informed PEREZ that the vehicle was ready for pick up from the same unidentified male at the Grand Hotel Tijuana.  CASTILLO instructed PEREZ to drive the vehicle to his CASTILLO's house in Fresno, California. PEREZ was instructed to clean out the vehicle of personal effects and leave key with

CASTILLO's uncle, known to PEREZ as "CHEPO". PEREZ stated that both he and BATTA know CASTILLO are all mutual friends.

17.     BATTA and PEREZ were arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance. PEREZ was booked into the San Diego Metropolitan Correction Center. BATTA was booked into the GEO Detention Facility.

18.     The Target Devices were found in Defendants personal property and was seized at the time of arrest. During the interview, the Defendants were shown the Target Devices and identified the Target Devices as belonging to them.

19.     Pursuant to consent from BATTA (Target Device 1) and earlier approved search warrants of PEREZ' cellphones (Target Device 2 and 3), SA Sajo extracted data from the Target Devices using mobile forensic tools. These mobile forensic tools extract data contained within telephones and their memory cards. Due to the frequent technical advancements in telephones and/or operating software, these mobile forensic tools may not be able to extract all of the data that is contained within a particular telephone and its memory cards.

20.     Here, with respect to the Target Devices, mobile forensic tools were able to extract data from the telephones. However, a review of the contents of the extraction of the Target Devices has raised concerns about whether the mobile forensic tools were able to extract all the data contained within the Target Devices that constitutes evidence of crimes as described in Attachment B.

21.     Based upon my experience, training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the Target Devices. Because a forensic collection of data from the Target Devices may not have resulted in the seizure of all of the data that constitutes evidence of crimes as described in Attachment B, I hereby request that the court issue a warrant authorizing law

enforcement agents and/or other federal and state law enforcement officers to search the Target Devices, and seize the items listed in Attachment B, using the manual methodology described below.

22.     In light of the above facts and my experience and training, I believe that there is probable cause to believe that BATTA and PEREZ were using the Target Devices to communicate with others to further the importation and/or distribution of illicit narcotics into and/or through the United States.  Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event.  I am also aware that co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest in order to determine the whereabouts of the narcotics. Accordingly, I request permission to search the Target Devices for data beginning on December 19, 2020, up to and including January 18, 2021.

## METHODOLOGY

23.     It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and/or serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device.  Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing.  An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device.  For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network.  Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device.  While current technology provides some solutions for acquiring some of the data stored in some cellular/mobile

telephone models using forensic hardware and software, not all devices are amenable to forensic data acquisition. Additionally, even where forensic data acquisition is possible, current technology may not extract all of the stored data. In such circumstances, as here, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive.

24.     Following the issuance of this warrant, I will collect the Target Devices and subject it to manual analysis. The manual analysis of the data contained within the Target Devices will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant by manual review may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

26.     Prior attempts to obtain this evidence are described above.

## CONCLUSION

27.     Based on the facts and information set forth above, I submit there is probable cause to believe that a manual search of the Target Devices will yield evidence of BATTA and PEREZ' violations of Title 21, United States Code, Sections 952, 960, and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Eric Sajo*

_____

Special Agent Eric Sajo

Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 27th day of May 2022

_____

Hon. Andrew G. Schopler

United States Magistrate Judge